IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

OASEA M. WILLIAMS,            §
                             §
              Plaintiff,      §
                             § Civil Action No. 3:09-CV-0103-D
VS.                          §
                             §
MICHAEL J. ASTRUE,           §
COMMISSIONER OF SOCIAL       §
SECURITY,                    §
                             §
              Defendant.      §

<u>MEMORANDUM OPINION</u>

Plaintiff Oasea M. Williams ("Williams") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits and for supplemental security income under titles II and XVI of the Act. For the reasons that follow, the Commissioner's decision is affirmed in part and vacated in part, and this matter is remanded to the Commissioner for further proceedings consistent with this memorandum opinion.

I

Williams is 63-years old and has an 11th grade education. She previously worked as a grocery store cashier and cashier/supervisor. She filed an application seeking social security benefits, alleging disability beginning April 8, 2005. The Commissioner denied her application, both initially and on

reconsideration, and Williams requested a hearing.  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Williams was not disabled.

The ALJ's decision followed the five-step sequential process for determining whether Williams is disabled.  At step one, the ALJ found that Williams has not engaged in substantial gainful activity since the date of her claimed disability.  At step two, he found that Williams suffers from a number of severe impairments—including hypertension, obesity, diabetes, osteoarthritis, asthma, and fibromyalgia—which "cause significant limitation in [Williams'] ability to perform basic work activities."  R. 5-O.[1]  The ALJ found at step three that Williams does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Specifically, he found that Williams "does not have a severe mental impairment."  *Id.* at 5-P.  Although some of Williams' medical records noted depression, the ALJ concluded that she had failed to allege a mental impairment either in her claims or at the hearing, and that the records

---

[1]This page is designated "5O" in the record, which is easily confused with "50."  For clarity, the court will refer to it and similarly-designated pages in the record with a hyphen between the numeral and letter.  To the court's knowledge, this is the first administrative record that has been paginated this way.  Social security records are not always easy to follow, but this method of numbering is unnecessarily cumbersome and should not be used in future cases on the undersigned's docket.

indicated that any depression was "situational in nature and there is no diagnosis or assessment of limitations based on a mental impairment." *Id.*

The ALJ found that Williams' residual functional capacity ("RFC") would allow her to perform her previous job as a grocery store cashier or supervisor; that Williams can "lift 10 pounds frequently and 20 pounds occasionally; [and that] she can sit for 6 hours of an 8 hour day and she can stand or walk for 8 hours of an 8 hour day." R. 5-P. As a part of his analysis of her medical record and other evidence, the ALJ found that "[Williams'] subjective complaints [of pain] are found to be in excess of what could generally be expected and her testimony is found to not be fully credible." R. 5-Q. At step four, the ALJ found that, because a grocery store cashier or supervisor position would not "require the performance of work-related activities precluded by [Williams' RFC]," she is not disabled. R. 5-S. Because he concluded, at step four, that Williams is not disabled, the ALJ did not proceed to step five.

Williams sought review by the Appeals Council, which denied her request. The ALJ's decision thus became the final decision of the Commissioner. Williams now seeks judicial review on the basis of essentially three arguments: first, the ALJ failed to consider evidence that she was unable to maintain a full-time work schedule at her previous jobs because of her frequent doctor and hospital

visits; second, the ALJ did not take into account Williams'
obesity, either independently or in combination with other
impairments, when conducting steps three and four of his analysis;
and, third, Williams' mental impairments should be recognized as
severe, and these impairments undermine the ALJ's determination of
Williams' RFC.

                                II

     The court's review of the Commissioner's decision is limited
to determining whether substantial evidence supports the decision
and whether the Commissioner applied the proper legal standards to
evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th
Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995)
(per curiam).  "The Commissioner's decision is granted great
deference and will not be disturbed unless the reviewing court
cannot find substantial evidence in the record to support the
Commissioner's decision or finds that the Commissioner made an
error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)
(footnotes omitted).

     "The court may not reweigh the evidence or try the issues de
novo or substitute its judgment for that of the [Commissioner]."
*Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).  "If the
Commissioner's findings are supported by substantial evidence, then
the findings are conclusive and the Commissioner's decision must be
affirmed." *Martinez*, 64 F.3d at 173.  "Substantial evidence is

                              - 4 -

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or that has lasted or could be expected to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the

Commissioner uses a five-step sequential inquiry. *Leggett,* 67 F.3d at 563; *Martinez,* 64 F.3d at 173-74.   The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2010).   "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).   At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact.   The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts;

- 6 -

(2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

A

Williams contends that the ALJ's finding that she is capable of sustained work is not supported by substantial evidence. She points to her history of doctor appointments and hospital visits that she maintains would prevent her from sustaining full-time employment. Williams argues that the ALJ erred by failing to take into account the impact that such medically-necessitated absences would have on her ability to find and maintain a job as a grocery store cashier or supervisor.

The Commissioner responds that there is substantial evidence

to support the ALJ's decision.  The Commissioner characterizes Williams' argument as amounting to an assertion that she suffers from an intermittent impairment of her ability to work, due to her medical appointments.  He asserts that Williams failed to argue that she suffered from an intermittent impairment that waxed and waned.  The Commissioner therefore posits that the ALJ's conclusion that Williams was capable of returning to her former work as a grocery store employee included a determination that she could maintain such work for an extended period of time, and that the ALJ implicitly determined that the frequency of Williams' medical appointments would not preclude her from working.

In reply, Williams apparently concedes that the ALJ was not required to make a specific determination regarding her ability to maintain employment over a period of time, but she argues that the ALJ failed to take into account when formulating her RFC all the evidence demonstrating that she was unable to perform sustained work.[2]

B

The court holds that substantial evidence supports the ALJ's findings regarding Williams' medical appointments.  "[I]f an

---

[2]As a part of her first argument, Williams also contends that the ALJ failed to properly consider evidence of her mental impairments of depression and anxiety when determining that she was capable of sustained employment.  For clarity, and to avoid unnecessary repetition, the court will address Williams' contentions regarding her alleged mental impairments when considering her third argument.  *See infra* § V.

individual's medical treatment significantly interrupts the ability
to perform a normal, eight-hour work day, then the ALJ must
determine whether the effect of treatment precludes the claimant
from engaging in gainful activity." *Newton v. Apfel*, 209 F.3d 448,
459 (5th Cir. 2000).  Williams apparently did not raise the issue
of frequent medical appointments as grounds for being unable to
work.   In her testimony, she did not discuss her medical
appointments.  Her attorney also failed to raise the issue during
his examination of the vocational expert.  Although Williams cites
her medical records as supporting the finding that she had multiple
physician and emergency room visits in 2005, 2006, and part of
2007, she does not point to any evidence that she would require the
same number of medical appointments in the future, or of how many
absences are typically permitted by an employer.[3]  Her argument
thus amounts to an assertion that the ALJ should have independently
tallied up Williams' medical appointments during the years in
question (by culling through her medical records), determined that
Williams would require a similar number of appointments in the
future, and concluded that the frequency of these visits would
preclude her from sustaining full-time employment.  "The ALJ's duty
to investigate . . . does not extend to possible disabilities that

---

[3]The cases that Williams cites——in which courts have held that
frequent medically-related absences would preclude full time
employment——do not control the resolution of how many absences
would be acceptable in the particular jobs relevant in Williams'
case.

are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett*, 67 F.3d at 566. Williams has not demonstrated that she would require ongoing medical treatments that would cause her to miss work in the future. *Cf. Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) ("The claimant testified that to alleviate his back pain he underwent traction three or four times daily. Physicians' reports substantiate [his] assertion that this traction treatment was medically prescribed."); *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam) (holding that claimant "established an impairment which necessitated a medical regimen which in turn, in the opinion of the vocational expert, precluded him from engaging in gainful activity"). The ALJ's decision is certainly supported by substantial evidence.[4]

IV

A

Williams next argues that the ALJ failed to properly consider the impact of her obesity when formulating her RFC. The ALJ found

---

[4]This conclusion is distinguishable from the one below at § V concerning Williams' alleged mental impairments. The record evidence addressed here concerns the number of physician and emergency room visits and Williams' complaint that the ALJ should have found this evidence in the record and addressed whether it affected Williams' capability to perform sustained employment. The evidence addressed below concerns proof of mental impairments reflected in Williams' medical records. The ALJ *is* required to investigate disabilities that are clearly indicated on the record. *See Leggett*, 67 F.3d at 566.

that, among other impairments, Williams suffered from a severe
impairment of obesity.  Williams maintains that the ALJ neither
discussed how her obesity might impact meeting or equaling a listed
impairment, nor evaluated the effect of her obesity on her RFC.
She also contends that it is unclear from the ALJ's decision
whether he considered her obesity in assessing her credibility and
in determining her RFC.

The Commissioner responds that the ALJ did consider Williams
obesity, as required, and that substantial evidence supports his
determination.

B

As with her medically-related absences, Williams did not list
obesity as an impairment that limited her ability to work.  *See,
e.g.,* R. 48 (specifying only "[c]arpal tunnel, herniated disc,
diabetes").  Despite this failure, the ALJ included obesity as one
of Williams' "severe" impairments.  Under the regulations, the ALJ,
in making the disability determination, must consider impairments
of which he is aware, not merely those that are specifically
alleged.  *See* 20 C.F.R. § 404.1545(a)(2) (2010) ("We will consider
all of your medically determinable impairments of which we are
aware . . . when we assess your [RFC].").

The court holds that substantial evidence supports the ALJ's
determination regarding Williams' obesity.  The ALJ's decision
demonstrates that he took Williams' obesity into account when

performing his relevant analysis.  In addition to listing obesity as one of Williams' "severe" impairments, he also noted——when assessing Williams' RFC——that the medical expert ("ME") at the hearing "testified that the record showed that the claimant was obese and that she has high blood pressure, and diabetes mellitus." R. 5-R.  The ALJ also limited Williams' RFC to "light capacity" work, which would likely be consistent with any obesity-related limitations.  The record supports the conclusion that the ALJ took Williams' obesity into account when determining her RFC.

Substantial evidence also supports the ALJ's credibility determination.  The ALJ found, in relevant part:

> Considering the medical evidence of record and the other non-medical factors such as the claimant's daily activities, the use and effect of medications and other measures used for the relief of pain, the claimant's subjective complaints are found to be in excess of what could generally be expected and her testimony is found to be not fully credible[.]

R. 5-Q.  Credibility determinations are generally left to the discretion of the ALJ, and this court will not overturn such a decision unless it is impermissibly vague or unsupported by the record.  *See McGowan v. Astrue*, 2009 WL 2614487, at *4 (N.D. Tex. Aug. 25, 2009) (Fitzwater, C.J.).  The ALJ's decision is not reversible based on his failure to mention Williams' obesity when discussing her credibility.  The ALJ stated that his credibility determination took into consideration "the medical evidence of

- 12 -

record and the other non-medical factors," which would include
Williams' obesity.  R. 5-Q.  There is substantial evidence to
support the ALJ's determination regarding Williams' credibility
and, as it relates to her obesity, her RFC.

V

A

Williams' final argument is that the ALJ failed to adequately
take into account her mental health problems.  This argument
essentially rests on two premises: first, that the ALJ failed to
adequately consider (at step two) evidence that Williams suffers
from a "severe" mental impairment; and, second, that Williams'
mental impairments should have led to a finding that she is not
capable of sustained employment due to stress and anxiety, thus
making the ALJ's RFC determination an unrealistic picture of
Williams' ability to work.  The Commissioner responds that Williams
failed to allege any mental impairment.

B

The ALJ's discussion of Williams' mental health problems is
confined to a single paragraph of his step-two analysis (regarding
which impairments qualified as "severe"):

> The records from Vickery Health Clinic also
> note depression but the claimant does not
> allege a mental impairment in the claims or at
> the hearing.  The description of her
> depression is situational in nature and there
> is no diagnosis or assessment of limitations
> based on a mental impairment.  The undersigned
> finds that the claimant does not have a severe

- 13 -

mental impairment.

R. 5-P.   Williams asserts that the ALJ ignored evidence that, due to her impairments, she was unable to complete a full-time workweek at her previous job.

On some of the forms related to her Social Security disability claim, Williams listed anxiety and/or depression as impairments (although mental impairments are not mentioned on other forms). Williams cites her written statements indicating that her work hours were reduced due to a doctor's recommendation that she avoid stress.  In documents in her medical record, Williams stated that she had received treatment from a psychologist, but that she stopped such visits because they were no longer covered by Medicaid.  Her records also show that she was prescribed various anti-depressant medications.  Williams' treatment at the Vickery Health Center, which is the only mental health evidence to which the ALJ refers in his decision, included a diagnosis of recurrent major depressive disorder and anxiety.  The diagnosis codes reflect a moderate case of major recurring depressive disorder, and anxiety of an unspecified character.

Williams did not mention depression or anxiety during her hearing testimony.  After prompting by her attorney, she discussed a number of physical maladies.  But she failed to raise any mental impairment claims, and she did not refer to any depression-related treatments or prescriptions.  When asked at the conclusion of her

testimony whether she had any other problems that had not been discussed, she responded in the negative.

Williams argues that the ALJ does not address in his opinion any evidence suggesting that she is unable to sustain employment, so it cannot be inferred that the ALJ considered this evidence when formulating her RFC. Williams maintains that, even if she did not allege a mental impairment in the hearing, the ALJ was aware of medical records diagnosing her depression——as evidenced by his brief discussion of mental impairments in the decision——and he was therefore required to consider the question fully. Williams challenges, as unsupported, the ALJ's finding that her diagnosed depression is situational in nature. She argues that even a situational impairment must be considered in formulating her RFC.

C

The court holds that the ALJ gave inadequate consideration to Williams' possible mental impairments.

Because a treating physician is "familiar with the claimant's impairments, treatments, and responses," his opinion "on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton*, 209 F.3d at 455 (citations, alteration, and quotation marks omitted). The ALJ may give little or no weight to a treating source's opinion only if good cause is

shown.  *Id.* at 455-56.  "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.  But "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453.

A remand of this case could perhaps have been avoided had Williams not inexplicably failed to raise her alleged mental impairments during the hearing.  But the ALJ was obligated nonetheless to "evaluate every medical opinion" submitted.  *See* 20 C.F.R. § 404.1527(d) (2010).  Courts have held that an ALJ's RFC determination was not supported by substantial evidence when the ALJ failed to fully consider the issue and "the record contained numerous references to [the claimant's] alleged mental illness as well as medication . . . for treating the same." *Wingate v. Astrue*, 2009 WL 3064685, at *19 (S.D. Tex. Sept. 21, 2009).  When the ALJ's opinion omits mention of relevant evidence of a mental impairment in a claimant's record, reviewing courts have held that the ALJ failed in his obligation to "fully and fairly" develop the

facts. *See id.* at *15; *Cannon v. Astrue*, 2009 WL 2448261, at *3-*5
(S.D. Tex. Aug. 6, 2009) (reversing ALJ's decision that failed to
discuss record evidence of depression diagnosis); *Reeves v. Astrue*,
2009 WL 2211857, at *6 (N.D. Miss. July 24, 2009) (holding that, in
view of clear evidence and hearing testimony of plaintiff's carpal
tunnel syndrome, and vocational expert's testimony that
restrictions or limitations due to carpal tunnel syndrome would
negatively affect plaintiff's ability to work, ALJ's failure to
state that he had considered plaintiff's impairments singly and in
combination, failure to mention carpal tunnel syndrome, and
misnaming of physician when discussing records, showed that ALJ had
not properly considered all of plaintiff's impairments and required
remand because, without suggesting that ALJ's final determination
was wholly unsupported, in light of ALJ's failure to consider, or
to articulate consideration of, plaintiff's carpal tunnel syndrome,
court could not find that there was substantial evidence that ALJ
had considered its impact, either standing alone or in combination
with other impairments, as required by the regulations); *cf.*
*Gonzales v. Astrue*, 231 Fed. Appx. 322, 324 (5th Cir. 2007) (per
curiam) (holding that ALJ had no obligation to investigate learning
impairment when the record contained no evidence of such); *Ranes v.*
*Astrue*, 2009 WL 2486037, at *4 (N.D. Tex. Aug. 14, 2009)
(Fitzwater, C.J.) (upholding ALJ's determination of no disability
when there was no testimony at hearing *and* record contained no

evidence of mental impairment).  The ALJ's brief discussion of mental impairments in his opinion demonstrates that he was aware of the record evidence of mental impairments and therefore was under an obligation to fully consider it, including all relevant evidence from treating physicians.  Williams' failure to mention mental impairments at the hearing is not dispositive of the ALJ's obligation to consider her full medical record, including any impairments that have significant supporting evidence.

During Williams' hearing, the ALJ asked the ME whether, from his review of the medical records, he had found any evidence of *physical* impairments since April 2005.  The ALJ did not inquire about depression or anxiety.  "Unless the hypothetical question posed to the . . . expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ . . . a determination of non-disability based on such a defective question cannot stand."  *Bowling*, 36 F.3d at 436 (addressing vocational expert).  The ALJ's decision does not mention the medical records—other than those from Vickery Health Center—that discuss Williams' depression and anxiety.  Records that the ALJ did not mention include statements that Williams received a physician's orders to reduce her work hours because of stress, that she was seeing a mental health professional until Medicaid stopped paying for the visits, that she suffered from depression, and that she was prescribed anti-depressant medication.  The court cannot conclude

- 18 -

from the ALJ's decision that he in fact considered these relevant records when making his decision.   Indeed, the ALJ's specific citation of the Vickery Health Center records——without mentioning any of the other relevant documents——suggests that he considered the Vickery Health Center records alone.

The court does not suggest that a disability claimant can obtain reversal of an ALJ's determination of no disability merely by omitting mention of alleged impairments until after the hearing. Rather, the court's decision results from the fact that, despite William's unexplained failure to raise these impairments at the hearing, the ALJ was aware of the evidence of mental impairments. Because the ALJ must fully analyze every impairment of which he is aware, the failure to do so in this case requires a partial vacatur and remand.   Thus presenting evidence of all alleged impairments at the hearing is the best way, even if not the only way, for a claimant to ensure that the ALJ is aware of all of her claims and therefore has a duty to adequately address each allegation in his opinion.

The court also holds that the ALJ's conclusion that "claimant does not allege a mental impairment in the claims" is not supported by substantial evidence.   On forms submitted prior to her appeal, Williams noted that she suffered from depression, received treatment from a mental health professional, and was prescribed anti-depressant medication.   One Social Security Administration

- 19 -

form that was submitted under cover sheet directly to the ALJ shows that Williams was taking anti-depressant medication and that doctors had told her that she suffered from "depression & anxiety." R. 96-97.

The court also concludes that, in addition to the ALJ's apparent failure to consider other relevant records, some of which were from treating sources, his analysis of the Vickery Health Center records themselves is conclusory. His statement that "[Williams'] depression is situational in nature and there is no diagnosis or assessment of limitations based on mental impairment," R. 5-P, is not supported by substantial evidence. And because the Vickery Health Center records are from a treating physician, the ALJ was required to give them controlling weight unless he first applied the six-factor test set forth in 20 C.F.R. § 404.1527(d)(2), which he failed to do.

Finally, the court holds that the manner in which the ALJ considered Williams' alleged mental impairments caused her prejudice. "It is not for the court to weigh the evidence; however, the court must determine whether the ALJ used the proper legal standards to evaluate the evidence." *Nalls v. Astrue*, 2008 WL 5136942, at *4 n.3 (N.D. Tex. Dec. 8, 2008) (Fitzwater, C.J.) (citing *Ripley*, 67 F.3d at 555). For the reasons stated, the court concludes that the ALJ's determination that Williams does not have a severe mental impairment is not supported by substantial

evidence.   "The  Fifth  Circuit  does  not  require  formalistic compliance with rules to uphold an ALJ's opinion.  However, some indication must exist . . . that the ALJ complied with the rules and considered all of the evidence.  There is no such indication here." *Nemoede v. Astrue*, 2008 WL 4332521, at *7 (N.D. Tex. Sept. 8) (Averitte, J.) (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994), *rec. adopted*, 2008 WL 4332521, at *1 (N.D. Tex. Sept. 22, 2008) (Robinson, J.).  The weight of the unmentioned records regarding depression and anxiety is greater than that of mere "isolated comments which are insufficient to raise a suspicion of non-exertional impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam); *see also Schools v. Comm'r*, 1999 WL 33537136, at *6 (N.D. Miss Dec. 23, 1999).  The ALJ's omission of relevant evidence——and the necessary implication that such evidence was not considered——prevents the court from concluding that this was a harmless error.

Contrary to the Commissioner's position, Williams *did* raise claims of mental impairments in her written applications to the Commissioner, even if she failed to do so during the hearing. Moreover, even assuming that Williams does have a determinable mental impairment, but that it is not severe, the ALJ must still consider  the  impact  of  Williams'  non-severe  mental impairments——either  singly  or  in  combination  with  other conditions——when he determines her RFC.   *See* 20 C.F.R.

§ 404.1545(a)(2); *see also Carrillo v. Astrue*, 2009 WL 4667122, at *17 (W.D. Tex. Nov. 30, 2009). Williams has pointed to evidence that her depression and anxiety prevented her from maintaining full-time employment at her former work. The ALJ's determination that Williams' RFC allowed her to return to her past work as a cashier or as a cashier/supervisor appears to fail to take this evidence into account.

D

It is not the role of this court to determine anew whether Williams' possible mental impairments are severe, or whether they support a finding of a more limited RFC than the ALJ found. But here, the ALJ's determination that Williams does not have a severe mental impairment—while drawing unexplained conclusions and failing to mention relevant facts from the record—is not supported by substantial evidence. His omission of mental impairments in the formulation of the RFC is also erroneous, because all medically-diagnosable conditions are to be reviewed at that stage, even those that are not deemed to be "severe." *See* 20 C.F.R. § 404.1545(a)(2). The ALJ may find it necessary or helpful to order an evaluation of Williams' mental impairment before making his determination. *See, e.g., Brock*, 84 F.3d at 728 ("A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment."). On remand, "[a]lthough the court

- 22 -

does not expect the ALJ to address every piece of evidence and
every step of his reasoning process, a decision should include at
least sufficient detail for the reviewing court to determine
whether the proper legal standards were used to evaluate the
evidence." *Nalls*, 2008 WL 5136942, at *6.

                              *      *      *

     Accordingly, for the reasons stated, the Commissioner's
decision is AFFIRMED IN PART and VACATED IN PART, and this matter
is REMANDED to the Commissioner for further proceedings consistent
with this memorandum opinion.

     February 11, 2010.


                              _____
                              SIDNEY A. FITZWATER
                              CHIEF JUDGE


                              - 23 -